## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBRA ANN KIRKLAND,** | : | **CIVIL ACTION NO. 3:12-CV-2560** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN, Acting** | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

### <u>MEMORANDUM</u>

Presently before the court in the above-captioned matter are the complaint (Doc. 1) of plaintiff Debra A. Kirkland ("Kirkland") seeking review of a decision of the Commissioner of Social Security[1] ("Commissioner") denying her claim for social security and disability benefits, the Commissioner's answer (Doc. 7) thereto, and the transcript (Doc. 8) of administrative proceedings. The issues are fully briefed, (Docs. 11-13), and the matter is ripe for review. For the reasons that follow, the court will vacate the Commissioner's decision and remand the above-captioned matter for further proceedings, as necessary, and issuance of a new decision.

---

[1] Michael J. Astrue was the Commissioner of Social Security when the instant action was filed against him in his official capacity. Astrue subsequently vacated his position, and Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. See Official Social Security Website, http:// www.socialsecurity.gov/pressoffice/factsheets/colvin.htm (last accessed March 13, 2014). Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action. FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

## I.    Factual and Procedural History

Debra Ann Kirkland ("Kirkland") was born on March 4, 1962, and was forty-seven (47) years old at the time of alleged disability onset.[2]  (Tr. at 109[3]).  The record reveals that Kirkland received her general equivalency degree ("GED") and has past relevant work experience as a housekeeping cleaner, a warehouse worker, and a janitor.  (Tr. at 26).

Kirkland protectively filed[4] an application for supplemental security income[5] ("SSI") on August 11, 2009, and applied for disability insurance benefits[6] ("DIB") on

---

[2] At all times relevant to this matter, Kirkland was a "younger individual" under the Social Security regulations, meaning that her age would not seriously impact her ability to adjust to other work.  (Tr. at 26); see 20 C.F.R. §§ 404.1563(c); 416.963(c); see also 20 C.F.R., pt. 404, subpt. P, app. 2 § 201(h)(1) ("The term younger individual is used to denote an individual 18 through 49.").

[3] References to "Tr. at __" are to the transcript of administrative proceedings (Doc. 8) filed by the Commissioner on February 26, 2013.

[4] A protective filing occurs when an individual initially contacts the Social Security Administration to file a claim for benefits and requests an expedited filing date.  Simply stated, it allows an individual to have an application date based upon the date of his or her first contact with the Administration.

[5] Supplemental security income is a federal income supplement program funded by general tax revenues rather than social security taxes.  See 42 U.S.C. § 1381.  The program is designed to help the aged and blind or disabled individuals who have limited or no income.  See id. § 1381a.

[6] Disability insurance benefits are paid to individuals who are both disabled and "insured," meaning the individual has worked long enough and paid social security taxes.  42 U.S.C. §§ 415(a), 416(i)(1).  The last date that an individual meets the insured requirement is commonly referred to as the "date last insured."  Id. § 416(i)(2).  The ALJ found that Kirkland met the insured requirements through June 30, 2010, and thus Kirkland must show that she suffered from a disability on or before that date.  See 20 C.F.R. § 404.131.  Insured status is irrelevant to an individual's eligibility for supplemental security income benefits.  See id. § 1382.

August 27, 2009.  (Id. at 119-28).  Kirkland alleges that various impairments, both

individually and in combination, have rendered her totally disabled and unable to

engage in any gainful employment since April 29, 2009.  (Id. at 109, 116).  Kirkland

asserts that the following impairments substantially limit her functional abilities:

degenerative joint disease in her bilateral hips, arthritis, herniated discs, hepatitis

C, depression, and bipolar disorder.  (Id. at 19, 448).  The administration denied

Kirkland's application on February 4, 2010.  (Id. at 35-44).  The administrative law

judge ("ALJ") thereafter held a hearing and heard testimony from Kirkland and a

vocational expert.  (Id. at 443-501).

During the hearing, Kirkland testified at length with respect to subjective

complaints and the symptoms that she perceives as disabling.  With respect to

physical symptoms, Kirkland testified that the biggest reason that she was unable

to work after April 29, 2009, was that her right knee was inflamed.  (Id. at 452, 455

(identifying inflamed right knee as the "number one reason" that she is unable to

work)).  She stated that her knee becomes inflamed approximately three or four

times in a month.  (Id. at 484).  Kirkland testified that she is status post bilateral hip

replacement and that her hips often "lock up" on her, making it difficult to bend

over.  (Id. at 456).  She also testified that occasionally, but not daily, she experiences

a sharp pain in her right leg for two to three minutes at a time.  (Id. at 457).  She

presented at the hearing with a cane and explained that there are "times I don't

have to carry it" but "other times that I need it for support."  (Id. at 485).  Kirkland

testified that she is diagnosed with hepatitis C and occasionally experiences fatigue

as a result, but she has not treated for it since 2003.  (Id. at 458).  She stated that

she has had epidural injections to relieve pain associated with two herniated discs

but has refused surgery because of perceived risk factors.  (Id. at 476-78).

Kirkland stated that in addition to her right knee pain and her right hip

locking, she is disabled by depression.  (Id. at 459).  She testified that she isolates

and tends to stay to herself, and is "just not right in the head when it comes to

people."  (Id. at 459, 471).  However, she explained that she was never disciplined at

work for how she treated a supervisor, coworker, or customer, and that she stayed

mostly to herself.  (Id. at 475).  Kirkland testified that her physical pain amplifies

her depression and that she will often just sit around feeling sorry for herself when

she gets depressed.  (Id. at 489).  Kirkland testified that although she used to "hear

voices," the episodes have not been "as frequent or as profound" since she began

taking medication and attending therapy.  (Id. at 481-82).  She stated that she hears

voices approximately three or four times per month, that they distract her, and that

they make her want to hurt herself.  (Id.)

With respect to the limiting effects of her impairments, Kirkland stated that

she can walk approximately two blocks before she needs to rest for five minutes and

that she can sit comfortably for twenty to thirty minutes before she needs to  get up

to stretch.  (Id. at 483-84).  She stated that she gets up to stretch about two or three

times per day.  (Id. at 484).  Kirkland explained that she could carry up to ten, or

maybe twenty, pounds, and can carry heavier groceries such as milk and potatoes.

(Id. at 494).  Kirkland testified that she thinks that the combination of her physical

and mental impairments would require her to miss work fourteen days out of the month.  (Id. at 487).

Kirkland stated that she currently lives alone in a second-floor apartment. (Id. at 450).  With respect to her daily activities, she testified that she cares for her own personal hygiene needs, cleans the apartment, handles grocery shopping, and is generally "constantly sweeping, constantly moving" to "keep[] . . busy."  (Id. at 471).  Kirkland testified that as far as interacting with others, she speaks with her mother and several other family members daily and plays with her goddaughter and grandchildren.  (Id. at 472).  She also stated that one close friend visits her three or four times per week, and another calls her occasionally to see how she is doing.  (Id.)  Kirkland explained that she enjoys reading (when she is able to concentrate), watching television, and listening to music.  (Id. at 473).

After the hearing, the ALJ issued a decision finding that Kirkland is not disabled.  (Id. at 11-28).  Specifically, the ALJ concluded that Kirkland has the residual functional capacity ("RFC") to perform light work[7] with enumerated limitations.  (Id. at 19).  The vocational expert testified that various unskilled jobs exist in the national and local economy within these limitations.  (Id. at 498-501). On November 2, 2012, the Social Security Appeals Council denied Kirkland's

---

[7] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).  "[A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  Id.

request for review of the ALJ's decision.  (Id. at 5-9).  On December 20, 2012, having

exhausted her administrative remedies, Kirkland commenced this civil action to

challenge the decision of the ALJ pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).[8]

## II.   Standard of Review

District courts have jurisdiction to review decisions of the Commissioner

denying disability insurance benefits or supplemental social security income based

upon 42 U.S.C. § 405(g).  See id. ("Any individual . . . may obtain review of [any final

decision of the Commissioner] by a civil action commenced within sixty days after

the mailing to him of such decision.").  When considering such an appeal, district

courts have plenary review of all legal issues decided by the Commissioner. Poulos

v. Comm'r of Soc. Sec., 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Comm'r of Soc.

Sec., 181 F.3d 428, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d

Cir. 1995).  Judicial review of the Commissioner's findings of fact is much more

limited: the test is deferential and tasks the court to determine whether the factual

---

[8] "The final determination of the [Commissioner] after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).  "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . .  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business."  Id. § 405(g).  Under the Local Rules for the United States District Court for the Middle District of Pennsylvania, "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" shall be "adjudicated as an appeal."  LOCAL RULE OF COURT 83.40.1.

findings are supported by "substantial evidence." 42 U.S.C. § 405(g) ("The findings

of the [Commissioner] as to any fact, if supported by substantial evidence, shall be

conclusive."); see Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) ("Where . . .

findings of fact are supported by substantial evidence, we are bound by those

findings, even if we would have decided the factual inquiry differently."); see also

Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993); Brown v. Bowen, 845 F.2d 1211,

1213 (3d Cir. 1988).

    Substantial evidence "does not mean a large or considerable amount of

evidence, but 'rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)

(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v.

Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d

358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla," but less

than a preponderance, of the evidence. Brown, 845 F.2d at 1213 (citing Stunkard v.

Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988)). In an adequately

developed factual record, substantial evidence may be "something less than the

weight of the evidence, and the possibility of drawing two inconsistent conclusions

from the evidence does not prevent an administrative agency's finding from being

supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607,

620 (1966).

    Substantial evidence exists only "in relationship to all the other evidence in

the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into

account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. N.L.R.B.</u>, 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999) (quoting <u>Mason</u>, 994 F.2d at 1066). The ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Johnson</u>, 529 F.3d at 203; <u>Cotter</u>, 642 F.2d at 706–07. Therefore, the district court must scrutinize the record as a whole on appeal. <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981); <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 407 (3d Cir. 1979).

## III.   Sequential Evaluation Process

To receive disability benefits, social security claimants must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is considered to be "unable to engage in substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The ALJ employs a five-step process in evaluating DIB and SSI claims. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to query, in

8

sequence, whether the claimant: (1) is engaging in "substantial gainful activity"[9]; (2) has an impairment that is "severe"[10] or a combination of impairments that is severe; (3) has an impairment or combination of impairments that meets or equals the criteria of a "listed impairment" or "listing"[11]; (4) has the "residual functional capacity" ("RFC") to return to his or her past work[4]; and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The burden of proof rests with the claimant throughout the first four

[9] If the claimant is engaging in substantial gainful activity, the claimant is not disabled under the Act and the Commissioner proceeds no further.  Substantial gainful activity is work that "[i]nvolves doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit." 20 C.F.R. § 416.972.

[10] An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. Id. §§ 404.1545(b); 416.945(b).  Basic mental or non-exertional abilities include the abilities to understand, carry out, and remember simple instructions, and to respond appropriately to supervision, coworkers, and work pressures.  Id. §§ 404.1545(c); 416.945(c). If the claimant does not have an impairment or combination of impairments which is severe, the claimant is not disabled, and the sequential evaluation process ends  Id. §§ 404.1509, 404.1520(c), 416.920(c).  Importantly, once a claimant establishes an impairment or combination of impairments which is severe, the ALJ must consider all medically determinable impairments in the subsequent steps of the sequential evaluation process, whether severe or not.  Id. §§ 404.1523, 416.923.

[11] A listed impairment is one that appears in the Commissioner's Listing of Impairments, which is "a list of impairments presumed severe enough to preclude any gainful work." Sullivan v. Zebley, 493 U.S. 521, 525 (1990); see 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments).  If the claimant has an impairment, or any combination of impairments, that meets or equals a listed impairment, the plaintiff is disabled.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Otherwise, the sequential process proceeds.  Id. §§ 404.1520(e), 416.920(e).

[4] If the claimant has the RFC to do his or her past relevant work, the claimant is not disabled and the sequential evaluation ends.  Id. §§ 404.1520(f), 416.920(f).

steps and with the Commissioner at step five.  <u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987).

At step four, the Commissioner determines the claimant's RFC.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An RFC represents the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  <u>See</u> Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996).  The RFC assessment must include a discussion of the individual's abilities.  <u>Id.</u>; 20 C.F.R. §§ 404.1545, 416.945; <u>Fargnoli</u>, 247 F.3d at 40 (defining RFC as that which an individual is still able to do despite the limitations caused by his or her impairment(s)).  If the claimant does not have the RFC to perform his or her past relevant work, or the claimant has no past relevant work, the burden at step five shifts to the Commissioner to prove that the claimant can perform other work in the national economy.  <u>See</u> <u>Kangas</u>, 823 F.2d at 777 (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)).

As noted above, the ALJ in the matter *sub judice* conducted an evidentiary hearing and took testimony from the claimant and a vocational expert.  The ALJ applied the sequential evaluation process and concluded that Kirkland is not disabled under the Act and thus not entitled to DIB or SSI.  At step one, the ALJ concluded that Kirkland has not engaged in substantial gainful activity since April 29, 2009, the alleged onset date of her disability.  (Tr. at 16).  In the second step, the ALJ found that Kirkland suffers from the following severe impairments: bilateral hip degenerative joint disease status post bilateral total hip arthroplasty, lumbar

degenerative disc disease, hepatitis C, major depressive disorder, and generalized anxiety disorder.  (Id.)

Next, in step three, the ALJ held that Kirkland's impairments neither separately nor in combination meet or equal a listed impairment.  (Id. at 17-18). The ALJ first considered Kirkland's degenerative joint disease and degenerative disc disease under the 1.00 listings,[5] pertaining to musculoskeletal disorders, but found that Kirkland does not suffer an inability to ambulate or perform fine and gross movements nor has she demonstrated nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication.  (Id. at 17). The ALJ also considered Kirkland's hepatitis C diagnosis under listing 5.05,[6] pertaining to chronic liver disease, but concluded that Kirkland does not suffer esophageal, gastric, or ectopic varices' hemorrhaging; ascites or hydrothorax; spontaneous bacterial peritonitis; hepatorenal syndrome; hepatic encephalopathy; hepatopulmonary syndrome; or end stage liver disease with chronic liver disease scores (as defined in § 5.00D11)) of 22 or greater.  (Id.)

The ALJ also considered Kirkland's mental impairments under listing 12.04,[7] pertaining to affective disorders, and 12.06,[8] pertaining to anxiety-related disorders. (Id. at 17-18).  The ALJ observed that Kirkland does not satisfy the Paragraph B

---

[5] See 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00.

[6] Id. § 5.05.

[7] Id. § 12.04.

[8] Id. § 12.06.

criteria of either listing, which requires objective medical evidence of at least two

of the following: marked[9] restriction of activities of daily living, marked difficulties

in maintaining social functioning, marked difficulties in maintaining concentration,

persistence, or pace, or repeated episodes of decompensation, each of extended

duration.  (Id.)  The ALJ also concluded that Kirkland does not satisfy Paragraph C

of either listing, which requires medical evidence that she (a) has experienced

repeated episodes of decompensation, each of extended duration, (b) suffers from a

residual disease process that has resulted in such marginal adjustment that even a

minimal increases in mental demands or changes in environment would cause her

to decompensate, (c) has a current history of 1 or more years' inability to function

outside a highly supportive living arrangement, or (d) has a complete inability to

function independently outside of her home.  (Id.)

    In concluding that Kirkland's mental impairments do not meet the criteria

of either listing, the ALJ made the following pertinent observations: First, that

Kirkland's mental impairments do not limit her daily living activities, noting that

she lives independently and is able to care for herself, perform household tasks, use

public transportation, shop for food and personal items, and manage money.  (Id. at

17).  Second, that she has only moderate difficulties in social functioning, observing

that while Kirkland suffers from a low frustration tolerance, poor coping skills, and

---

[9] A marked restriction or difficulty is defined as one that is more than moderate but less than extreme and that interferes seriously with the ability to function independently, appropriately, effectively, and on a sustained basis.  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C).

a likely inability to get along with authority figures, she nonetheless maintains an ability to function well enough to ask simple questions and request assistance of others, maintain social relationships, and interact with friends and family daily, enjoying such activities as cooking, talking and watching television. (Id.) Third, that Kirkland experiences moderate difficulties with regard to concentration, pace, and persistence, noting again her low frustration tolerance and occasionally poor response to stress, but observing that she maintains the ability to carry out short and simple instructions associated with unskilled work and maintain attendance and punctuality. (Id. at 18). Finally, as to episodes of decompensation,[10] the ALJ acknowledged that Kirkland experienced one episode of self-harm behavior and suicidal ideation in September of 2009, but noted that since beginning treatment, Kirkland has not undergone inpatient psychiatric hospitalizations, partial hospitalizations, or any form of increasingly intensive psychiatric or psychological treatment indicative of further decompensation. (Id.) For these reasons, the ALJ concluded that Kirkland's mental impairments neither collectively nor individually meet or equal a listing 12.04 or 12.06. (Id.)

The ALJ assessed Kirkland's RFC at step four and opined that Kirkland has an RFC to perform unskilled, light work, with the following limitations: (1) she can lift no more than twenty pounds occasionally and ten pounds frequently; (2) she can

---

[10] Repeated episodes of decompensation each for an extended duration means three (3) episodes within one (1) year, or an average of once every four months, each lasting for a period of two weeks or more. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C)(4).

stand/walk for only three hours during an eight hour work day; (3) she can bend, squat, kneel, climb ramps or stairs, and twist only occasionally; (4) she must avoid concentrated exposure to moving machinery and unprotected heights; (5) she is limited to work requiring no interactions with coworkers or the public; and (6) she is limited to work which requires no more than occasional work setting changes or interactions with supervisors. (Id. at 19). The ALJ concluded that Kirkland is unable to perform her past relevant work as a light, unskilled cleaner[11] or medium, unskilled warehouse worker or janitor. (Id. at 26). Based on Kirkland's age, work experience, education, and RFC, and the vocational expert's testimony, the ALJ concluded that Kirkland is able to perform light, unskilled work. (Id. at 19). The ALJ identified the following representative occupations: potato chip sorter, final assembler, and surveillance system monitor. (Id. at 27). The vocational expert opined, and the ALJ found, that these jobs exist in significant numbers in the local and national economies. (Id.) As a result, the ALJ held that Kirkland is not disabled as defined by the Social Security Act, 42 U.S.C. § 401 *et seq.*

IV.   **Discussion**

Kirkland's arguments on appeal are threefold: first, she asserts that the ALJ erred by failing to consider her need for a cane and to alternate sitting and standing

---

[11] Although the housekeeping cleaner position falls within the category of light and unskilled work which the ALJ found to be within Kirkland's capabilities, the ALJ observed that the standing and walking demands of this position exceed Kirkland's restriction to standing/walking for only three hours out of an eight hour shift. (Tr. at 26).

in developing Kirkland's RFC; second, she argues that the ALJ's RFC does not fully account for her non-exertional mental limitations; and third, she contends that the ALJ erred by failing to evaluate all medically determinable impairments in step two. The court addresses these arguments *seriatim*.

### A.     Kirkland's Physical RFC

Kirkland first contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ "failed to consider" Kirkland's need to use a cane for balance and ambulation and her need to alternate periods of sitting with standing and walking. (Doc. 11 at 9-13). Kirkland also argues this the error at step four spills over to step five, because the ALJ then failed to present these additional limitations to the vocational expert in her hypothetical. The court agrees with Kirkland as to both points.

Kirkland is correct that the ALJ failed to acknowledge that she "required a cane to walk and balance" during the relevant period. (Doc. 11 at 10 (citing Tr. at 19-26)). Kirkland cites record evidence indicating that she was observed using the cane when she applied for DIB and SSI (Tr. at 116, 118-19), that her mother and friend reported that she used a cane (id. at 120, 125-26, 128, 133-34), that Dr. Brian D'Eramo, D.O., a consultative medical examiner, noted "I truly believe the cane is needed for her for balance at this time," (id. at 287), and that Dr. Akram Shaar, Kirkland's treating physician, observed that she requires a hand-held assistive device to stand/walk. (Id. at 441). She contends that the ALJ's failure to explain why she omitted this material limitation is reversible error.

Kirkland contends that this error is compounded by the ALJ's rejection of the opinions of Drs. D'Eramo and Shaar, both of whom concluded that Kirkland must have the option to alternate sitting and standing at regular intervals. (Doc. 11 at 12-13). Dr. D'Eramo opined, *inter alia*, that Kirkland is able to stand/walk for two hours during an eight hour day and could sit for eight hours provided that she can sit and stand at her option. (Tr. at 21 (citing <u>id.</u> at 288)). The ALJ credited Dr. D'Eramo's opinion, in part, but found that Kirkland "is less limited in her ability to . . . stand/walk than opined by Dr. D'Eramo based on her admissions regarding her daily activities and the opinion of her treating physician." (<u>Id.</u> at 21). The ALJ also acknowledged the opinion of Dr. Shaar, Kirkland's treating physician, who found that she can stand/walk for three hours and sit for five hours of an eight hour work day but "needs to shift positions occasionally" and "requires additional breaks and absences during a normal workday/workweek." (<u>Id.</u> at 21). The ALJ gave some weight to Dr. Shaar's opinion because he "had the opportunity to treat, observe, examine, and evaluate [Kirkland] over a significant period." (<u>Id.</u> at 21). However, the ALJ rejected Dr. Shaar's opinion with respect to a need for additional absences and breaks and a limited ability to sit/stand based, again, on Kirkland's "admissions regarding her abilities and daily activities." (<u>Id.</u>) Kirkland submits that other non-medical evidence also tends to support a sit/stand limitation. (Doc. 11 at 12 (citing Tr. at 125, 133, 165, 457, 483-84 (Kirkland, her mother, and her friend all reporting that  she is limited in how long she can sit without a break))).

In making an RFC determination, the ALJ is permitted to weigh the credibility of evidence presented but must offer "some indication of the evidence which he rejects and his reason(s) for discounting such evidence."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing Plummer, 186 F.3d at 429; Cotter, 642 F.2d at 707); also Cotter, 642 F.2d at 704-05 (RFC finding must "be accompanied by a clear and satisfactory explication of the basis on which it rests."). An ALJ may not reject pertinent or probative record evidence without providing an explanation for doing so.  See Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008); also Cotter, 642 F.2d at 706-07 ("[A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.").  Without such an explanation, a district court reviewing the ALJ's decision cannot tell whether evidence simply was not credited or mistakenly was ignored.  Cotter, 642 F.2d at 706; see also Burnett, 220 F.3d at 121.

In the same vein, the ALJ is not required to offer an exhaustive dissertation of all of the evidence.  See Fargnoli, 247 F.3d at 42 ("[W]e do not expect the ALJ to make reference to every relevant treatment note . . . ."); see also Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record.").  Only when the ALJ rejects conflicting probative evidence must he or she fully explain the reasons for doing so.  Fargnoli, 247 F.3d at 42 (conflicting evidence results in a "particularly acute need for an explanation of the reasoning behind the ALJ's conclusions" and

courts "will vacate or remand a case where such an explanation is not provided"). Otherwise, when the ALJ has sufficiently explained his or her reasons for rejecting certain evidence and no other infirmities are present, the district court should affirm the ALJ's decision.  See id.

Here, the ALJ has offered no explanation for rejecting objective medical and non-medical evidence establishing that Kirkland uses a cane for ambulation and balance.  Kirkland's treating physician and a consultative medical examiner both opined that the cane is necessary.  (See Tr. at 287, 441).  Non-medical evidence and testimony support the claimant's contention that the cane is medically necessary. (Id. at 116, 118-19, 120, 125-26, 128, 133-34).  And the ALJ herself observed that Kirkland presented with a cane on the day of her administrative hearing.  (Id. at 484-86)).  Nonetheless, and without explanation, the ALJ failed to acknowledge Kirkland's use of a cane in her decision.  (See id. at 19-26).

The ALJ also offered an inadequate explanation for rejecting Kirkland's testimony and the medical evidence suggesting that she must be able to alternate sitting and standing at her option.  (Tr. at 21-22 (rejecting opinions of Drs. D'Eramo and Shaar to the extent they limit Kirkland's ability to stand/walk)).  Despite the opinions of two physicians limiting Kirkland's ability to stand/walk, the ALJ found that Kirkland is "less limited" in her abilities than opined by Drs. D'Eramo and Shaar "based on [her] admissions regarding her abilities and daily activities."  (Id. at 21).  Beyond this conclusory finding, the ALJ does not cite to or identify any

particular "admission" by Kirkland contradicting the opinions of her consulting or treating physicians.  (See id.).

It is true, as the Commissioner contends, that an ALJ need not reference every piece of medical or non-medical evidence in arriving at an RFC calculation. See Fargnoli, 247 F.3d at 42 ("[W]e do not expect the ALJ to make reference to every relevant treatment note . . . ."); Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004) ("There  is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record.").  The court again emphasizes, however, that an ALJ *must* explain his or her reasons when rejecting probative evidence.  Fargnoli, 247 F.3d at 42; Plummer, 186 F.3d at 429.  Without an explanation, the reviewing court cannot adequately determine whether the ALJ's rejection of certain evidence was proper.  Cotter, 642 F.2d at 706-07 ("Because it is apparent that an [ALJ] cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.").

The ALJ's decision *sub judice* fails to offer any meaningful explanation for rejecting objective medical evidence establishing the necessity of Kirkland's use of a cane and her need to sit and stand at her option.  Consequently, the court cannot determine whether the rejection of that evidence was proper or conclude that the ALJ's RFC assessment is supported by substantial evidence. See Cotter, 642 F.2d at 706-07; see also Fargnoli, 247 F.3d at 43.  Further, as Kirkland alleges, this error taints the remainder of the ALJ's decision, in particular her analysis at step five,

where the ALJ presented a hypothetical to the vocational expert which makes no mention of a sit/stand option or use of a cane.  See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question [posed to a vocational expert] must reflect all of a claimant's impairments that are supported by the record."). The court will thus remand the matter to the ALJ for further proceedings and a new decision.

### B. Kirkland's Mental RFC

Kirkland also asserts that the ALJ erred by finding at step three that she has "moderate" limitations in concentration and persistence, a low frustration tolerance, and an occasionally poor response to stress, but failing to account for those limitations in her mental RFC or the hypothetical to the vocational expert. Specifically, at step three, the ALJ observed as follows:

> With regard to concentration, persistence, or pace, the claimant has moderate difficulties.  While the record demonstrates the claimant has a low frustration tolerance and occasionally responds poorly to stress, she retains the ability to carry out the short and simple instructions associated with unskilled work, and maintain regular attendance and punctuality.  She has no restrictions with regard to her ability to understand or remember.  The medical records do not demonstrate more than a moderate restriction in the claimant's ability to concentrate; the records also do not demonstrate any limitations in the claimant's ability to maintain pace, nor has the claimant alleged any such limitations.

(Tr. at 18).  After summarizing the medical and non-medical evidence pertaining to Kirkland's mental impairments, the ALJ presented the following hypothetical to the vocational expert:

> . . . [A]ssuming that the claimant were limited to occasional
> – or, frequent lifting or carrying of up to 10 pounds,
> occasionally 20; maximum of standing and walking of three
> hours in an eight-hour day; occasional bending and
> squatting, occasional kneeling, occasional ramps- and stair-
> climbing, only occasional twisting, occasional contact with
> – or, would need to avoid concentrated, I should say,
> exposure to moving machinery or unprotected heights; and
> only occasional work setting changes; occasional
> interaction with supervisors, none with coworkers or the
> public.  Would she be able to do any of her past work?

(Id. at 498).  In follow up, the ALJ limited Kirkland to only occasional decision

making and judgment.  (Id. at 500).  Kirkland posits that this hypothetical fails to

sufficiently encompass her limitations as identified by the ALJ at step three.  (Doc.

11 at 13-16).

　　In support of her position, Kirkland relies on Ramirez v. Barnhart, 372 F.3d

546 (3d Cir. 2004).  In Ramirez, the ALJ observed that the claimant often suffered

from "deficiencies of concentration, persistence, or pace resulting in a failure to

compete tasks in a timely manner (in work settings or elsewhere)."  Id. at 552.  On

appeal from the district court's decision in favor of the Commissioner, the Third

Circuit panel held that the ALJ's hypothetical, which limited the claimant to "one

to two step tasks on a regular and continuing basis," did not sufficiently describe

the claimant's intellectual limitations.  Id.  Reciting the well established mandate

that a "hypothetical question posed to a vocational expert 'must reflect *all* of a

claimant's impairments," and holding that the material omission of the claimant's

frequent deficiencies of concentration and pace violated this principle, the panel

remanded the matter to the Commissioner for further proceedings.  Id. at 552-55

(noting that although "there may be a valid explanation for this omission from the ALJ's hypothetical," failure to provide one is reversible error) (quoting Chrupcala, 829 F.2d at 1276).

Kirkland also directs the court to a handful of district court cases from within this Circuit as support for the proposition that the ALJ must expressly include her concentration and persistence limitations in hypotheticals posed to the vocational expert.  In Foley v. Barnhart, 432 F. Supp. 2d 465, 481-82 (M.D. Pa. 2005), the court concluded that the ALJ's decision, which recognized that the claimant experienced moderate difficulties with concentration, persistence, and pace and limited the claimant to "work that requires low to moderate concentration," did not sufficiently account for the limitations identified by the ALJ.  Id. at 482-83 (noting "pace and concentration are different characteristics which could have distinctly different impacts on performance").  Similarly, in Harris v. Astrue, 2012 U.S. Dist. LEXIS 73337, *30-32 (M.D. Pa. May 25, 2012), the ALJ acknowledged limitations in pace but did not expressly include those limitations in her hypothetical; the court held that "if  an administrative law judge poses a hypothetical question to a vocational expert that fails to reflect all of the applicant's impairments that are supported by the record, the vocational expert's opinion cannot be considered substantial evidence." Id.  And in Corona v. Barnhart, 431 F. Supp. 2d 506, 516 (E.D. Pa. 2006), the court held that limitations to "occasional changes in the work place" and an assumption that the claimant could "understand, remember, and follow simple instructions" were not sufficiently specific to encompass the limitations in concentration and

persistence identified at step three by the ALJ. <u>Id.</u> (concluding that the ALJ must address "with specificity all of the mental impairments she found credible in her decision").

The Commissioner responds that the ALJ accounted for Kirkland's moderate limitations in concentration and persistence by limiting Kirkland to unskilled work. (Doc. 12 at 25-26). The <u>Foley</u> court considered and rejected this argument. <u>Foley</u>, 432 F. Supp. 2d at 482. In doing so, the court held that, "in light of relevant caselaw, the remedial nature of the Act, the fact that [the Commissioner] bears the burden at this stage of the disability determination," the ALJ must include specific limitations with respect to concentration, persistence, and pace in her hypothetical in order for the vocational expert's opinion to be substantial evidence. <u>Foley</u>, 432 F. Supp. 2d at 482; <u>also</u> <u>Harris</u>, 2012 U.S. Dist. LEXIS 73337 at *32 ("Although the administrative law judge limited [the claimant] to unskilled work, this does not adequately reflect a limitation in pace."); <u>Corona</u>, 431 F. Supp. 2d at 515 ("[T]he skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job."). The court concurs with the rationale of the <u>Foley</u> decision, in particular given the Third Circuit's mandate that "great specificity" is required in vocational hypotheticals. <u>Ramirez</u>, 372 F.3d 546 (quoting <u>Burns v. Barnhart</u>, 312 F.3d 113, 122 (3d Cir. 2002)).

The Commissioner's argument fails for a second reason as well. It is the ALJ's written decision, *not* her hypothetical to the vocational expert, which limited Kirkland to unskilled work. (<u>See</u> Tr. at 498). Thus, there is no evidence that this

23

purported limitation was ever presented to the vocational expert in the first place. (See id.)  The court will not assume a vocational expert's familiarity with limitations that were not presented to her by the ALJ.  See, e.g. O'Connor-Spinner v. Astrue, 627 F.3d 614, 619 (3d Cir. 2010) (noting that courts may assume a vocational expert's familiarity with the medical record or testimony in some cases, but exception does not apply when ALJ poses specific hypotheticals "because in such cases we infer that the VE's attention is focused on the hypotheticals and not the record").  The court thus rejects the Commissioner's argument that an "unskilled" designation in the ALJ's decision sufficiently encompasses Kirkland's limitations in concentration and persistence.

Ultimately, there is no material distinction between the matter *sub judice* and Ramirez, Foley, Harris, or Corona.  In each case, the ALJ identified a limitation but failed to present that limitation to the vocational expert.  See Ramirez, 372 F.3d at 552-54; Harris, 2012 U.S. Dist. LEXIS 73337 at *30-32; Corona, 431 F. Supp. 2d at 516; Foley, 432 F. Supp. 2d at 481-82.  The same is true here: the ALJ expressly acknowledged that Kirkland's mental impairments cause "moderate difficulties" with regard to concentration and persistence, noting that medical records support a moderate restriction in her ability to concentrate.  (Tr. at 18).  The ALJ expressly found that Kirkland occasionally responds poorly to stress and has a low frustration tolerance.  (Id.)  Nonetheless, the ALJ entirely failed to account for those difficulties

when she identified Kirkland's functional limitations to the vocational expert.[12]

Consequently, the court finds that the ALJ's decision at step five is not supported

by substantial evidence and will remand the case to the Commissioner for a

particularized inquiry of how Kirkland's limited abilities in concentration and

persistence would limit her ability to perform the alternative work identified by the

vocational expert.  See Ramirez, 372 F.3d at 552-54; Harris, 2012 U.S. Dist. LEXIS

73337 at *30-32; Corona, 431 F. Supp. 2d at 516; Foley, 432 F. Supp. 2d at 481-82.[13]

### C.    Medically Determinable Impairments

Kirkland lastly takes issue with the ALJ's findings at step two.  The ALJ

concluded that Kirkland suffers from the following severe impairments: bilateral

hip degenerative joint disease status post bilateral total hip arthroplasty, lumbar

degenerative disc disease, hepatitis C, generalized anxiety disorder, and major

---

[12] The ALJ did conclude that Kirkland suffers no apparent difficulties with pace, and Kirkland does not allege any such difficulties at this juncture. The court thus finds no error in the ALJ's apparent declination to include pace limitations in her hypothetical.

[13] Kirkland also argues that the ALJ erred in rejecting the GAF scores assessed by Dr. Yaroslavsky. (Doc. 11 at 16-17).  The court disagrees.  Kirkland's position selectively evaluates the ALJ's decision and ignores the ALJ's comparison of Kirkland's static GAF scores to Dr. Yaroslavsky's treatment notes, which indicate consistent progress and evince that Kirkland "experienced significant improvement in and control over her symptoms with proper treatment." (Tr. at 23).  Based on this inconsistency, the ALJ assigned little weight to the GAF score.  (Id. (observing that inconsistency may also indicate that Dr. Yaroslavsky "merely transposed the prior score" rather than "updating the assessment").  Kirkland's position that the ALJ "speculated" or substituted his own opinion for that of Dr. Yaroslavsky is simply incorrect.

depressive disorder, concluding that each results in more than minimal restrictions to Kirkland's ability to perform work-related activities.  (Tr. at 16).  Kirkland contends that the ALJ erred by failing to identify bipolar disorder as a medically determinable impairment and by understating the severity of her lumbar disc condition.  (Doc. 11 at 17-20).  The Commissioner argues that the failure to evaluate the severity of Kirkland's bipolar disorder diagnosis is harmless because the ALJ found that Kirkland "had severe depression" and "[d]epression, like bipolar disorder, is a mood disorder."  (Doc. 12 at 25-27).  The Commissioner also argues that the ALJ properly identified Kirkland's back condition as lumbar degenerative disc disease and fully considered all symptoms deriving from that diagnosis.  (Id. at 26).

With respect to the bipolar disorder diagnosis, the court concurs with Kirkland.  The ALJ acknowledged Kirkland's bipolar disorder diagnosis during the administrative hearing, at which time Kirkland's counsel contended that Kirkland's "serious medically determinable impairments that would affect her ability to work" are "the bilateral hip replacements . . . [and] the bipolar disorder."  (Id.).  Kirkland's medical records consistently reflect the diagnosis of and treatment for her bipolar disorder.  (Id. at 377 (8 progress notes dated February 26, 2010 through December 22, 2010 indicating diagnosis of, *inter alia*, bipolar disorder).  Nonetheless, the ALJ either ignored or implicitly rejected this diagnosis in discussing which of Kirkland's medically determinable impairments are severe.  (Id. at 16).  Although the ALJ may have perfectly acceptable reasons for excluding the bipolar disorder diagnosis from

26

her decision entirely, the court cannot discern those reasons from the decision as it currently stands.  See Fargnoli, 247 F.3d at 42; Plummer, 186 F.3d at 429; see also Cotter, 642 F.2d at 706-07 ("Because . . . an [ALJ] cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.").  For this reason, the court must remand the case for a clear and detailed explanation of the ALJ's reason for rejecting the bipolar disorder diagnosis as a medically determinable impairment at step two.  See Fargnoli, 247 F.3d at 42 (courts should "vacate or remand a case where such an explanation is not provided").

Kirkland also argues that the ALJ erred by understating the severity of her lumbar impairments.  (See Doc. 11 at 18).  Specifically, she takes issue with the ALJ's designation of her spine impairment as lumbar degenerative disc disease rather than identifying the exact medical terminology noted in her records.[14]  (Id.) As the Commissioner observes, the ALJ properly considered Kirkland's back impairment at each step of her sequential analysis, finding the condition to be severe, (id. at 16), identifying the limitations deriving therefrom, (id. at 19-22), and

---

[14] Specifically, Kirkland contends that the ALJ should have recognized that her back impairment is more severe: an L5-S1 right-sided disc extrusion with fragmentation compressing the thecal sac and nerve roots, causing marked canal stenosis and bilateral neural foraminal narrowing; a protrusion with fragmentation at the L4-5 level causing marked canal stenosis and bilateral neural foraminal narrowing; moderate spinal canal narrowing from the L1 through the L4 levels; lumbar spondylosis; lumbar radiculopathy; and herniated discs. (Doc. 11 at 18).

including those limitations in her RFC assessment and vocational expert

hypothetical.  (Id. at 25-26, 498-99).  Further, other than broadly challenging

semantics, Kirkland does not assert any additional limitation stemming from her

more specific characterization of her back impairment which would alter her

physical RFC.  (Doc. 11 at 18).  The court thus rejects this argument, but

nonetheless will remand the matter for the reasons identified *supra*.

## V.    Conclusion

For the reasons stated herein, the court will vacate the decision of the

Commissioner and remand the matter for further proceedings and issuance of a

new decision consistent with this memorandum.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:       March 25, 2014